# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KAMERON HAWKINS and AMBER LYNN DURBIN, | CIVIL ACTION NO. 2:16-CV-1719 |
| Plaintiffs | (Chief Judge Conner) |
| v. | |
| SWITCHBACK MX, LLC d/b/a SWITCHBACK RACEWAY, | |
| Defendant | |

## MEMORANDUM

Plaintiff Kameron Hawkins ("Hawkins") suffered injuries after he unsuccessfully attempted a jump while riding a dirt bike on an indoor course at defendant Switchback Raceway ("Switchback"). Hawkins and his mother, plaintiff Amber Lynn Durbin ("Durbin"), commenced this diversity action advancing three negligence claims against Switchback under Pennsylvania law. Before the court are the parties' cross-motions for summary judgment.

I.  **Factual Background and Procedural History**[1]

This personal injury lawsuit arises from physical injuries suffered by Hawkins following a dirt bike accident at Switchback's off-road riding and racing facility in Butler, Pennsylvania. Switchback promotes and stages dirt bike races for participants of all skill levels. (Doc. 28 ¶ 1; Doc. 32 ¶ 2). Switchback's website articulates its waiver and consent policy as follows:

> Dirtbike/ATV riding is dangerous. Accidents, injuries, and even death can occur. Ride at your own risk! All riders must sign a waiver before they will [be] permitted to ride. Minors will be required to have parental consent. During practice, there are limited to no flaggers. Please, ride safely.
>
> Click here to download a pdf copy of the waiver (250k).
>
> There is no trespassing on Switchback property. Anyone caught trespassing will be prosecuted to the full extent of the law.
>
> All minors that come without their legal parents they must have a NOTARIZED waiver to be able to ride. NO EXCEPTIONS.

---

[1] Local Rule 56 requires that a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 be supported by a "separately filed concise statement setting forth the facts essential for the Court to decide the motion for summary judgment, which the moving party contends are undisputed and material." LOCAL RULE OF COURT 56(B)(1). A party opposing a motion for summary judgment must file a separate statement of material facts, responding to the numbered paragraphs set forth in the moving party's statement and identifying genuine issues for trial. LOCAL RULE OF COURT 56(C)(1)(a)-(b). The opposing party may also "set[] forth in separately numbered paragraphs any other material facts that are allegedly at issue." LOCAL RULE OF COURT 56(C)(1)(c). Unless otherwise noted, the factual background herein derives from the parties' Local Rule 56 statements of material facts. (See Docs. 28, 32, 37, 39). To the extent the parties' statements are undisputed or supported by uncontroverted record evidence, the court cites directly to the statements of material facts.

(Doc. 30-9 at 1). Switchback's track manager, Mark Brader ("Brader"), testified that, pursuant to this policy, a minor is not be permitted to ride without a signed parental consent form and waiver. (Brader Dep. 29:5-18, 42:13-21).[2] He also testified that it was his responsibility to ensure that minors did not misrepresent their age or otherwise engage in efforts to improperly gain access to the track. (Id. at 56:4-8; see also Doc. 28 ¶ 10).

Hawkins began riding a dirt bike at the age of five or six. (Doc. 32 ¶ 4). He learned the ins and outs of dirt bike riding from his father, who raced dirt bikes and often brought Hawkins to spectate at off-road races. (See id. ¶¶ 7-9; Hawkins Dep. 20:5-22:4 ("Hawkins Dep.")). Hawkins began participating in races himself at "a young age" and even secured sponsorships. (Doc. 32 ¶ 6). He testified that he was aware of the dangers of riding dirt bikes from early on in his experience, that his father instructed him to avoid jumps that "you don't think you can handle," and that he wore protective gear to guard against the risk of injury. (Id. ¶¶ 7-8; Hawkins Dep. 21:20-22:21, 38:22-39:25, 133:3-12, 147:18-148:6). He acknowledges that dirt bike riding is "a dangerous sport," that "you could get hurt" on a dirt bike, and that a fall could cause "injury . . . or even death." (Hawkins Dep. 25:17-26:4, 38:13-21, 39:14-25, 147:18-148:6). Despite his protective measures, Hawkins has suffered injuries in the past riding a dirt bike. (Doc. 32 ¶ 14; see also Hawkins Dep. 38:22-39:25, 133:3-12). Hawkins had been to Switchback on three prior occasions: once as a spectator, once

---

[2] Partial transcripts of Brader's deposition are filed by the parties in numerous, separate docket entries. The court will cite to this deposition *passim* as "Brader Dep." without docket entry citations. The court employs this citation convention for all deposition transcripts cited throughout this memorandum.

3

as pit crew member for his friend Jonathan Franjko ("Franjko"), and once as a rider. (Doc. 32 ¶ 28).

The events preceding Hawkins' accident on January 9, 2016 are disputed by the parties and not fully explored in the Rule 56 record. According to Hawkins, he arrived at Switchback with several friends and met with Brader, who asked them whether they had been to Switchback before. (Hawkins Dep. 49:5-12). Hawkins relayed that, after the group responded affirmatively, Brader told them to sign in, accepted their payment, and provided them with wristbands to attach to their helmets to indicate they had been authorized to ride. (See id.) He denied ever being asked to present identification and did not recall being asked his age. (Id. at 133:13-23).

Switchback's account diverges considerably. According to Brader, Hawkins entered the indoor facility on January 9, 2016 with Franjko, who had a Switchback membership card. (See Brader Dep. 56:9-18). Brader did not recognize Hawkins and thought he appeared to be under the age of 18. (See id. at 56:19-57:2). Brader reported that he told Hawkins he needed to "take home a waiver and fill it out" and that he had to "bring [the waiver] out next time and join us another day." (Id. at 56:23-57:6). Brader does not recall Hawkins signing in on Switchback's sign-in sheet for January 9, 2016, but testified that he told Hawkins he "could not ride" without waiver and consent forms on file. (Id. at 76:12-77:1). Brader also testified that he does not know how Hawkins ultimately came to access the track on January 9, 2016. (Id. at 91:12-16). It is undisputed that Durbin did not execute a parental

4

consent form allowing Hawkins to participate in dirt bike riding at Switchback. (Doc. 28 ¶ 12).

On January 9, 2016, Hawkins somehow gained access Switchback's indoor dirt bike racing track. (See Doc. 28 ¶ 13; Doc. 32 ¶¶ 1, 13, 31). Hawkins "attempted a jump, without enough speed," on one of the track's "table top jumps," which caused the frame of his dirt bike to hit the ground and "flip [the] bike and Hawkins over." (Doc. 32 ¶¶ 13, 31). According to Brader, it was only after this wreck that he became aware that Hawkins had accessed the track. (See Brader Dep. 57:4-11). Brader testified that Hawkins "didn't look right" and that he offered to call an ambulance. (Id. at 82:10-83:12). Franjko confirmed that Brader asked "a couple times" whether Hawkins wanted medical attention. (See Franjko Dep. 58:12-59:1). Hawkins left Switchback's facility with his friends without receiving medical attention. (See Doc. 28 ¶ 17; Doc. 39 ¶ 17). Hawkins was subsequently treated for injuries including a lacerated kidney and pancreas, trauma to his spleen, a broken hip, a concussion, and post-concussion syndrome. (Doc. 28 ¶ 18). The accident occurred four months before Hawkins' 18th birthday. (See Doc. 32 ¶ 3).

Hawkins and Durbin commenced this lawsuit on November 15, 2016, asserting one claim of negligence each and one claim of negligence *per se* together. Plaintiffs contend that Switchback violated its internal policies and its legal duty of care by failing to ensure that Hawkins, a minor, did not access its facility without parental consent. The parties have filed cross-motions for summary judgment on each of the plaintiffs' claims. The motions are fully briefed and ripe for disposition.

5

## II. Legal Standard

Through summary adjudication, the court may dispose of those claims that do not present a "genuine dispute as to any material fact" and for which a jury trial would be an empty and unnecessary formality. FED. R. CIV. P. 56(a). The burden of proof tasks the non-moving party to come forth with "affirmative evidence, beyond the allegations of the pleadings," in support of its right to relief. Pappas v. City of Lebanon, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The court is to view the evidence "in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor." Thomas v. Cumberland County, 749 F.3d 217, 222 (3d Cir. 2014). This evidence must be adequate, as a matter of law, to sustain a judgment in favor of the non-moving party on the claims. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-57 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-89 (1986). Only if this threshold is met may the cause of action proceed. See Pappas, 331 F. Supp. 2d at 315.

Courts are permitted to resolve cross-motions for summary judgment concurrently. See Lawrence v. City of Phila., 527 F.3d 299, 310 (3d Cir. 2008); see also Johnson v. Fed. Express Corp., 996 F. Supp. 2d 302, 312 (M.D. Pa. 2014); 10A CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 2720 (3d ed. 2015). When doing so, the court is bound to view the evidence in the light most favorable to the non-moving party with respect to each motion. FED. R. CIV. P. 56; Lawrence, 527 F.3d at 310 (quoting Rains v. Cascade Indus., Inc., 402 F.2d 241, 245 (3d Cir. 1968)).

### III.   Discussion

Pennsylvania substantive law governs the negligence claims raised by the plaintiffs in this diversity action.  See Maghakian v. Cabot Oil & Gas Corp., 171 F. Supp. 3d 353, 358 (M.D. Pa. 2016) (citing Chamberlain v. Giampapa, 210 F.3d 154, 158 (3d Cir. 2000)); see also Erie R.R. Co. v. Tompkins, 304 U.S. 64 (1938).  Under Pennsylvania law, a plaintiff must prove the "four basic elements of duty, breach, causation, and damages."  Perez v. Great Wolf Lodge of the Poconos LLC, 200 F. Supp. 3d 471, 478 (M.D. Pa. 2016) (quoting Loughran v. Phillies, 888 A.2d 872, 874 (Pa. Super. Ct. 2005)).  That is, plaintiffs must prove: (1) the existence of a legal duty requiring a certain standard of conduct; (2) breach of that duty by the defendant; (3) a causal connection between defendant's breach and plaintiffs' injury; and (4) actual loss or damages.  Id. (quoting Berrier v. Simplicity Mfg., Inc., 563 F.3d 38, 61 (3d Cir. 2009)).

The parties' cross-motions for summary judgment concenter on two disputes: *first*, whether Switchback owed a legal duty of care to Hawkins in view of the no-duty rule set forth in Pennsylvania's Comparative Negligence Act, 42 PA. CONS. STAT. § 7102, and *second*, whether Hawkins assumed the risk of injury, negating any duty of care, by engaging in an activity which he understood to be dangerous.[3]

---

[3] Switchback also moves for summary judgment on plaintiffs' negligence *per se* claim, arguing that plaintiffs neither allege nor establish that Hawkins' injuries resulted from Switchback's violation of a statute, regulation, or ordinance.  (Doc. 33 at 14-17).  Plaintiffs agree to voluntarily dismiss the negligence *per se* count.  (Doc. 36 at 7).

7

### A. Duty of Care

The parties offer competing perspectives of the applicable duty of care. Switchback maintains that it had no duty to protect Hawkins from risks inherent in off-road dirt bike riding. Switchback invokes the no-duty rule set forth in Pennsylvania's Comparative Negligence Act, which provides that an operator of an off-road vehicle riding area—such as Switchback—"shall have no duty to protect riders from common, frequent, expected and nonnegligent risks inherent to the activity, including collisions with riders or objects." 42 PA. CONS. STAT. § 7102(b.3)(1). Switchback avers that the possibility of falling and suffering injury while engaged in off-road riding is an inherent, expected risk of the activity, and that the no-duty rule forecloses liability in this case.

Plaintiffs rejoin that the no-duty rule has no application here. They assert that this case does not concern a duty to protect patrons from the risks of off-road riding once they have accessed the track, but instead concerns Switchback's alleged negligence in allowing minors to access its facility in the first instance. Plaintiffs rely on the Armstrong County Court of Common Pleas' decision in Emerick v. Fox Raceway, 68 Pa. D. & C. 4th 299 (Pa. Ct. Com. Pl. 2004), wherein the state court found that off-road riding area operators have a legal duty to develop and follow internal procedures to check a prospective rider's age and to ensure minor riders do not access their facility without parental consent. Id. at 318. To hold otherwise, the court found, would be "contrary to good public policy." Id.

Plaintiffs insist that the Emerick decision is on all fours with their claims. The trouble with Emerick is that it fails to engage with or even acknowledge the no-duty rule, which became law on July 15, 2004—a mere six days before the Emerick decision issued. Plaintiffs posit that the lack of discussion of the new rule suggests that the court deemed it inapplicable, given that the case before the court involved policies which allowed a plaintiff to sneak onto the track rather than the conditions of the track itself. Switchback, for its part, insists that the court was either unaware of the new enactment or deemed it inapplicable because the accident at issue occurred before the statute's effective date.

We cannot ascribe weight to the Emerick decision when it failed to engage with this transformative legislative enactment. The court's opinion expressly states that it is grounded largely in public policy—but the state legislature six days prior explicitly and substantially transformed the Commonwealth's negligence policy as concerns tort liability for operators of off-road riding areas. In our view, the failure of the Emerick court to account for the no-duty rule severely diminishes its value as precedent. Nonetheless, because we determine *infra* that the assumption of the risk doctrine negates any duty that Switchback may have had to protect Hawkins, we need not determine, as a matter of law, what duty of care remains for operators of off-road riding areas with respect to minors attempting to access their facilities.

**B.     Assumption of the Risk**

Most tort claims in Pennsylvania are governed by the comparative negligence doctrine. See 42 PA. CONS. STAT. § 7102(a). But the legislature expressly preserved assumption of the risk as a defense in two categories of activities: off-road vehicle

9

riding, see id. § 7102(b.3)(2), and downhill skiing, see id. § 7102(c)(2). Specifically, as pertains off-road vehicle riding areas, the Comparative Negligence Act states: "The doctrine of knowing voluntary assumption of risk shall apply to all actions to recover damages for negligence resulting in death or injury to person or property brought against any off-road vehicle riding area operator." Id. § 7102(b.3)(2). The assumption of the risk doctrine operates to negate any legal duty ascribed to those plaintiffs seek to hold liable: "to the extent the injured plaintiff proceeded in the face of a known danger, he relieved those who may have otherwise had a duty, implicitly agreeing to take care of himself." Montagazzi v. Crisci, 994 A.2d 626, 635 (Pa. Super. Ct. 2010) (citing Carrender v. Fitterer, 469 A.2d 120, 124 (Pa. 1983)). The doctrine operates as a "no-duty" rule; that is, for those facilities for which the legislature preserved the assumption of the risk defense, the owner or operator "has no duty to protect the user from any hazards inherent in the activity." Chepkevich v. Hidden Valley Resort, L.P., 2 A.3d 1174, 1185-86 (Pa. 2010) (citations omitted).

Pennsylvania courts apply a subjective standard when determining whether a minor assumed the risk of a given activity. That is, the court must ask what the "*particular* minor plaintiff knows, sees, hears, comprehends, and appreciates" with respect to the risk involved. Bjorgung v. Whitetail Resort, LP, 550 F.3d 263, 269 (3d Cir. 2008) (quoting Berman v. Phila. Bd. of Educ., 456 A.2d 545, 550 (Pa. 1983)). To grant summary judgment based on an assumption of the risk defense, the court must find that the plaintiff (1) "consciously appreciated the risk" attending the activity, (2) assumed the risk of injury by nonetheless engaging in the activity, and (3) sustained an injury that was "the same risk of injury that was appreciated and

10

assumed." Zeidman v. Fisher, 980 A.2d 637, 641 (Pa. Super. Ct. 2009) (quoting Hadar v. Avco Corp., 886 A.2d 225, 229 (Pa. Super. Ct. 2005)). When reasonable minds could not disagree, the question of assumption of the risk is for the court. See Carrender, 469 A.2d at 124; see also M.D. v. Ski Shawnee, Inc., No. 14-CV-1576, 2015 WL 3866050, at *4 (M.D. Pa. 2015) (citing RESTATEMENT (SECOND) OF TORTS § 469D cmt. e (AM. LAW INST. 1965)).

No court has explored the assumption of the risk doctrine in the context of off-road riding areas following the 2004 amendment to the Comparative Negligence Act. But several courts have interpreted the doctrine as pertains to downhill skiing. The Pennsylvania Supreme Court has held that retention of the assumption of the risk doctrine in that context reflects the legislature's intent that a ski resort owner owes no duty of care to patrons for any risk "'inherent' in downhill skiing." Hughes v. Seven Springs Farm, Inc., 762 A.2d 339, 344 (Pa. 2000); see also Bjorgung, 550 F.3d at 268. Knowledge of the inherent risk has been deemed the *sine qua non* of an assumption of the risk defense. See M.D., 2015 WL 3866050, at *3. The plaintiff's age and relative degree of experience with the activity are relevant in determining whether that particular plaintiff was aware of a given risk. See id. (citing Bjorgung, 550 F.3d 263; Chepkevich, 2 A.3d 1174; Hughes, 762 A.2d 339). We can conceive of no reason why these principles, developed in the analogous context of downhill skiing, should not apply with equal force to negligence claims involving off-road riding areas. Compare 42 PA. CONS. STAT. § 7102(b.3)(1)-(2) with id. § 7102(c)(1)-(2).

We must first query whether the risk of falling during a jump and suffering serious injury is inherent in the activity of off-road riding. An "inherent risk" is one

11

which "cannot be removed without altering the fundamental nature" of the activity. Bjorgung, 550 F.3d at 268-69 (quoting Crews v. Seven Springs Mountain Resort, 874 A.2d 100, 105 (Pa. Super. Ct. 2005)). The Comparative Negligence Act identifies "collisions with riders or objects" as risks inherent in off-road riding. 42 PA. CONS. STAT. § 7102(b.3)(1). Common sense dictates that the risk of a fall or collision that does not involve another rider or object is equally inherent in the activity. Indeed, Hawkins' own experience bears this out—he testified that his accident on January 9, 2016, was not his first; that he knew from personal experience that attempting jumps carried a certain risk; and that he wore protective gear in an attempt to mitigate that risk. (Hawkins Dep. 38:22-39:25, 133:3-12, 147:24-148:6). We find that the risk of suffering serious injury when attempting a dirt bike jump is one which "cannot be removed without altering the fundamental nature" of dirt bike riding and is thus inherent in the activity. See Bjorgung, 550 F.3d at 268-69 (quoting Crews, 874 A.2d at 105).

We further conclude that reasonable persons could not debate whether Hawkins appreciated and knowingly assumed that risk. Hawkins was nearly 18 years old at the time of the accident and had been riding dirt bikes for more than 12 years. He was a vastly experienced rider. He was well aware that dirt bike riding carried the risk of serious injury and even death. Indeed, Hawkins acknowledged that a dirt bike presents a certain danger "even when the bike's on the ground." (Hawkins Dep. 92:4-93:2). Given this unequivocal record testimony, we have little difficulty finding that this particular rider—plaintiff Kameron Hawkins—knew, appreciated, and assumed the risks attending off-road dirt bike riding.

Anticipating the defense's strategy *sub judice*, plaintiffs contend that a minor cannot *ever* assume the risk of a particular activity, again invoking Emerick, in which the Armstrong County Court of Common Pleas held that, because a minor plaintiff is incapable of entering into a contract and cannot expressly waive liability for a given activity, a minor cannot impliedly assume that same risk by his or her actions. Emerick, 68 Pa. D. & C. 4th at 319. The state court provided no precedent in support of this sweeping conclusion. In this respect, Emerick runs counter to the great weight of authority in the state courts and in the Third Circuit Court of Appeals which have held consistently that a minor is capable of assuming the risk of a dangerous activity. See, e.g., Bjorgung, 550 F.3d at 268-69 (quoting Berman, 456 A.2d at 550); Montagazzi, 994 A.2d at 635-36; Berman, 456 A.2d at 550; see also Johnson v. Walker, 545 A.2d 947, 949-50 (Pa. Super. Ct. 1988).

The undisputed Rule 56 record establishes beyond debate that Hawkins knew, appreciated, and assumed the risk of injury attending off-road dirt bike riding. He was an experienced dirt bike rider who was fully aware that attempting a jump on a dirt bike carried with it an inexorable risk of injury. And he proceeded to attempt a jump on Switchback's indoor track notwithstanding that understood risk. Switchback accordingly had no duty to protect Hawkins on January 9, 2016. We will grant summary judgment to Switchback on Hawkins' negligence claim. Because Durbin's claim for economic damages is derivative of Hawkins' individual claim, we will likewise grant summary judgment to Switchback on Durbin's claim.

**IV.     Conclusion**

We are not unsympathetic to the serious injuries suffered by Hawkins. But the unequivocal fact remains that Hawkins—having more than a decade of experience riding on similar off-road tracks—voluntarily engaged in the dangerous sport of dirt bike riding knowing full well the risks of the activity. Switchback is not legally responsible for the injuries that Hawkins suffered at its facility. Accordingly, the court will grant summary judgment to Switchback on plaintiffs' negligence claims. An appropriate order shall issue.

       /S/ CHRISTOPHER C. CONNER
       Christopher C. Conner, Chief Judge
       United States District Court
       Middle District of Pennsylvania

Dated:     September 12, 2018